

FILED

Jan 23 2018, 9:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Thomas E. Rosta
Tammy J. Meyer
Ryan O. Farner
Metzger Rosta, LLP
Noblesville, Indiana

ATTORNEY FOR APPELLEE

Michael E. Polen, Jr.
Rubino, Ruman, Crosmer & Polen
Dyer, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael R. Krohn,<br>*Appellant-Defendant,*<br><br>v.<br><br>William C. Goodwin,<br>*Appellee-Plaintiff.* | January 23, 2018<br><br>Court of Appeals Case No.<br>45A03-1707-CT-1546<br><br>Appeal from the Lake Superior<br>Court<br><br>The Honorable Diane Kavadias<br>Schneider, Judge<br><br>Trial Court Cause No.<br>45D11-1105-CT-109 |

**Bailey, Judge.**

# Case Summary

[1]   William C. Goodwin ("Goodwin") was awarded $9,130,000.00 in compensatory and punitive damages upon his tort claims against Michael R. Krohn ("Krohn"). Krohn now appeals, presenting the sole issue of whether he

is entitled to a new trial on damages because of an erroneous jury instruction.[1] Goodwin re-frames the issue as whether Krohn has waived his allegations of instructional error. We affirm.

## Facts and Procedural History

On April 23, 2011, Goodwin was riding his motorcycle southbound on Cline Avenue in Schererville, Indiana when Krohn exited a parking lot and stopped in Goodwin's lane of travel. Goodwin crashed into the driver's side of Krohn's pickup truck. Goodwin, severely injured and bleeding internally, was airlifted from the accident scene. He ultimately underwent thirteen surgeries, including removal of half of his colon and reconstruction of his abdominal wall.

On May 24, 2011, Goodwin filed a complaint for damages against Krohn, alleging that Krohn had acted negligently, recklessly, willfully, and wantonly. In a related criminal case, Krohn pled guilty to driving while intoxicated. He filed an amended answer to Goodwin's complaint, admitting that he was partially at fault for the accident and alleging as an affirmative defense that Goodwin was also partially at fault.

A jury trial commenced on June 19, 2017 and concluded on June 21, 2017. The jury found Krohn to be 100% at fault and awarded Goodwin $9,100,000.00 as compensatory damages and $30,000.00 as punitive damages. Krohn did not

---

[1] Krohn does not contest the jury's determination that Krohn was 100% at fault.

file a motion to correct error challenging the amount of damages as excessive. He now appeals.

# Discussion and Decision

## Standard of Review

[5] In reviewing a trial court's decision to give or to refuse a tendered instruction, this Court considers whether the instruction correctly states the law, is supported by the evidence in the record, and is covered in substance by other instructions. *Wal-Mart Stores, Inc. v. Wright*, 774 N.E.2d 891, 893 (Ind. 2002). The trial court has discretion in instructing the jury and thus, we will reverse on the last two issues only when the instructions amount to an abuse of discretion. *Id.* However, when an instruction is challenged as being an incorrect statement of the law, appellate review of the ruling is de novo. *Id.* At 893-94.

## Analysis

[6] Krohn challenges Final Instruction 4/23. He articulates several perceived deficiencies, and ultimately claims, "there can be no question that the jury instruction at issue may have affected the $9.1 million dollar compensatory verdict." Appellant's Brief at 19. Our review of Krohn's arguments, which we will discuss in some detail below, reveals that, at bottom, Krohn's claim is that the damages were excessive. Indiana Trial Rule 59(A)(2) squarely addresses the procedure for challenging excessive damages. This rule provides "A

Motion to Correct Error is not a prerequisite for appeal, except when a party seeks to address: a claim that a jury verdict is excessive or inadequate."

[7] Without acknowledging the dictates of the foregoing Trial Rule and the potentially harsh result of non-compliance, Krohn instead couches his arguments in terms of a traditional jury instruction challenge. And, as we have noted, a claimed error in refusing a proffered instruction may invoke our review on three grounds: whether the instruction correctly states the law, whether it is supported by the evidence of record, and whether the substance of the instruction is covered by other instructions. *Wal-mart Stores, Inc.*, 774 N.E.2d at 893.

[8] In this regard, Krohn contends that Final Instruction 4/23 was a burden-shifting and mandatory instruction. More particularly, he argues that the instruction referenced various standards of proof, improperly categorized and explained general and special damages, misstated the law, and was confusing and internally inconsistent. He argues that he was prejudiced because the jury would have understood it was required to award some damages and, also, the instruction provided a basis for counsel's closing argument that the general damages award are to be greater than special damages.

[9] Goodwin responds that Krohn did not specifically address his instructional language concerns to the trial court and has thus waived the matter for appellate review. Goodwin additionally responds that the instruction did not mislead the jury and that Krohn is essentially lodging a challenge to the amount

of damages without having afforded the trial court the opportunity to reduce them.

[10]    Indiana Trial Rule 51(C) provides, in relevant part:

> No party may claim as error the giving of an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

The purpose of this rule is to protect inadvertent error on the part of the trial court. *Hill v. Rhinehart*, 45 N.E.3d 427, 439 (Ind. Ct. App. 2015). Accordingly, "the objection to the instruction must be sufficiently specific to make the trial court aware of the alleged error before it reads the instructions to the jury." *Id.* at 439-40. The objection must state why the instruction is misleading, confusing, incomplete, irrelevant, not supported by the evidence, or an incorrect statement of the law. *Id.* at 440. An objection that is not specific does not preserve error for appeal. *Id.*

[11]    Here, at the final instructions conference, the following discourse took place with respect to Instruction 4, which ultimately became Final Instruction 23 [to which we refer as Final Instruction 4/23]:

> Court: All right, Number 4.
>
> [Defense]: I believe the model should be used, Judge, as opposed to this version. I haven't seen the Court's proposed final instructions, but I presume you have one that certainly covers what's set forth in this –

Court: I thought this was patterned after the model.

[Plaintiff]: It's a fair and accurate statement of the law, Your Honor. It is patterned after the model. It contains all the same elements. It just helps define some it [sic] that we think helps assist the jury. It's been given in numerous cases, and I believe it's an appropriate and accurate statement of the law. It should be given.

Court: Yes. I've given this many times. I'll give it over your objection.

(Tr. Vol. III, pg. 57.)

[12] During this brief discussion, the trial court was made aware that Krohn had a distinct preference for a pattern instruction, albeit unspecified. Yet, Krohn did not provide the trial court with specific reasons for his preference or allege specific deficiencies in Proposed Final Instruction 4. Nonetheless, the cursory challenge apparently caused the trial court to recognize that an objection was being made and to scrutinize the instruction ultimately given. Because Krohn provided the trial court with the opportunity to examine instructional language and effect a substitution which allegedly would have prevented error, we cannot say that Krohn wholly waived any claim of error with respect to the instruction. Therefore, we proceed to the merits of his appeal. In doing so, however, we are mindful that an appellant cannot state one ground for instructional error at the trial court and prevail by identifying different grounds for error on appeal. *Hill*, 45 N.E.3d at 440.

[13]     Krohn begins his appellate argument by identifying each of the legal citations proffered in the trial court proceedings as support for the giving of Final Instruction 4/23 and arguing that the sources are outdated, merely persuasive as opposed to controlling authority, or involve very different claims or fact patterns. He also recites the language of Indiana Model Civil Jury Instruction 703, noting its "stark contrast" to the instruction given. Appellant's Brief at 12. We do not disagree with Krohn's stated preferences for brevity, clarity, and up-to-date language. However, he does not provide us with any authority for the proposition that an instruction may be successfully challenged by a collateral attack on authorities cited as part of the proffer or by showing a deviation from a model instruction. We have located no such authority.

[14]     Krohn's appellate argument next turns to the specific language of Final Instruction 4/23. He contends that an improper burden of proof was imposed upon him with the use of the following language:

> Your award cannot be solely a matter of guesswork; but as long as the facts of damage is [sic] established, defendants should bear the risk of any uncertainty as to the amount of damage they may have caused.

(App. Vol. II, pg. 24.) Assuming that Krohn may be said to have preserved his argument on burden-shifting by suggesting an alternative instruction to the trial court, he cannot prevail on the merits. Initially, we observe that the challenged language concerns "uncertainty as to the *amount* of damage" (emphasis added), as opposed to the decision to award damages in the first place. Moreover,

considering the instructions as a whole, the jury was informed more than once that the plaintiff bears the burden of proof to establish liability and damages in a tort claim.

[15] Krohn also argues that it was error to include the language "General damages are a broader category of compensation designed to compensate for the loss of quality of life," language omitted from the model instruction he preferred. (App. Vol. II, pg. 25.) Krohn directs us to *Canfield v. Sandock*, 563 N.E.2d 1279 (Ind. 1990). There, the trial court had instructed the jury in a personal injury action to consider the effect of the injury on the "quality and enjoyment of life" as a separate element when awarding damages. *Id.* at 1280. Our Indiana Supreme Court found this to be error:

> We remain concerned about the subjectivity of terms like loss of "quality and enjoyment of life" and loss of "personal enjoyment." Such terms are vague and open-ended and carry with them the potential for double recovery for the same damages. Consequently, we think instructions which define loss of "quality and enjoyment of life" as a separate element of damages send a jury to its deliberations too unconstrained with respect to damages.
>
> Notwithstanding our concern over the language of the instruction at issue, it is apparent that the phrase loss of "quality and enjoyment of life" includes some losses that should be considered by a jury as part of the damage calculation. . . .
>
> [W]e hold that trial courts should instruct juries in personal injury cases that they may consider "the nature and extent of the

> plaintiff's injury, and the effect of the injury itself on the plaintiff's ability to function as a whole person."

> The trial court erred when it instructed the jurors that they could consider "loss of enjoyment of life" as a separate element of damages in this case.

*Id.* at 1281-82. Final Instruction 4/23 does not suffer from this infirmity. The jury was not thereby instructed that loss of quality and enjoyment of life was a separate element of damages. The jury was not invited to award Goodwin a double recovery.

[16] Krohn next argues that the language "You are to determine whether the elements have been proved by a consideration of the evidence relating to damages" instructs the jury "that damages only need to be proven by a 'consideration' of the evidence." Appellant's Brief at 14. The particular sentence is in-artfully drafted, yet we think the jury was advised to undertake a "consideration of the evidence relating to damages" and not instructed – illogically – that an element was "proved by a consideration of the evidence." As we have previously observed, the instructions, taken as a whole, advise the jury that Goodwin bore the burden to prove his claims and damages by a preponderance of the evidence.

[17] Krohn also challenges the language of Final Instruction 4/23 categorizing special and general damages. He notes that the model jury instruction on damages does not set forth such a distinction; he does not, however, provide legal authority indicating that making such a distinction is erroneous.

[18] Finally, Krohn asserts that some language of Final Instruction 4/23 could have been understood by the jury to permit an award of damages "based merely on the fact that an injury/damage exists." Appellant's Brief at 16. That is, he argues that the jury may have been confused by the language "as long as the fact of damage is established, defendants should bear the risk of any uncertainty as to the amount of damage they may have caused" and "if you are satisfied from a preponderance of the evidence that the physical injury was caused by the defendant, Michael Krohn, you should not decline to award some amount by way of general damages." Appellant's Brief at 16-17.

[19] Although the challenged instruction may not have been a model of clarity, Krohn has not persuaded us that its giving amounts to reversible error. Krohn does not suggest that the evidence would support an award of no damages or only nominal damages. He has not denied, at trial or on appeal, that Goodwin was injured in the accident. He also conceded that he was at least partially at fault. He does not argue that the jury's assignment of zero fault to Goodwin is in error. Instead, he appears to concede that damages were appropriate but insists that a different damages instruction would have affected the amount in his favor, an issue that is squarely addressed by Trial Rule 59(A)(2). But, having failed to file a motion to correct error, Krohn seeks a collateral means to obtain re-assessment of the damages. Embellishing upon his extremely cursory trial objection, he asks that we reverse and remand this matter for a new trial, all the while conceding liability on his part. We discern no legal grounds from Krohn's arguments upon which to do so.

# Conclusion

[20] Essentially, Krohn seeks to collaterally attack the aggregate damages award without complying with Trial Rule 59(A)(2). In doing so, he challenged the giving of Final Instruction 4/23 on grounds of abuse of discretion or misstatement of law. From our review, he has presented us with no legal grounds upon which to reverse the jury's award of damages.

[21] Affirmed.

Kirsch, J., and Pyle, J., concur.